[Cite as *Sapp v. Bowen*, 2026-Ohio-2651.]

IN THE COURT OF APPEALS

TWELFTH APPELLATE DISTRICT OF OHIO

CLERMONT COUNTY

|  |  |  |
|---|---|---|
| JOSHUA J. SAPP, et al., | : | |
| Appellants, | : | CASE NO. CA2025-12-100 |
| vs. | : | OPINION AND JUDGMENT ENTRY 7/13/2026 |
| TIMOTHY BOWEN, et al., | : | |
| Appellees. | : | |
| | : | |

CIVIL APPEAL FROM CLERMONT COUNTY COURT OF COMMON PLEAS
Case No. 2024 CVC 0147

Curry Roby LLC,. And Trent M. Thacker and Robert S. Roby, for appellees.

McKenzie & Snyder LLP, and Matthew J. Hammer and Christopher J. Snyder, for appellants.

Garvin & Hickey LLC, and John D. Hance IV, for United Parcel Service, Inc.

## **O P I N I O N**

**SIEBERT, J.**

{¶ 1}   Appellants, Joshua ("JJ") and Emma Sapp, appeal the trial court's grant of summary judgment in favor of Appellees, Timothy Bowen and Ken Neyer Plumbing. The

Sapps assert the trial court erred because (1) the Sapps perfected service on Bowen in 2021, and (2) the trial court misconstrued and misapplied Ohio's Savings Statute.

{¶ 2} We find that the Sapps did not perfect service on Bowen in 2021. While we agree that the Sapps at least attempted to perfect service on Bowen, the Sapps failed to voluntarily dismiss the action within one year of filing the action. Therefore, the Savings Statute does not apply to "save" their subsequently filed case from the bar imposed by the applicable statute of limitations.

{¶ 3} The trial court did not err when it granted summary judgment in favor of Bowen and Neyer Plumbing, and we affirm its judgment.

**Factual and Procedural Background**

{¶ 4} On November 25, 2019, JJ and Bowen were involved in a serious motor vehicle accident with one another. Both were allegedly working in the course and scope of their employment. JJ worked for UPS, and Bowen worked for Neyer Plumbing when the accident occurred. JJ asserted Bowen's negligent driving caused the accident, which led to JJ sustaining serious injuries. The Sapps filed their "First Case," alleging negligence against Bowen, a respondeat superior claim against Neyer Plumbing (as Bowen's employer), and a loss of consortium claim on behalf of Emma.[1]

{¶ 5} While these are the facts the Sapps alleged and claims they asserted, their appeal is primarily related to questions concerning the procedural posture of the First Case and a virtually identical "Second Case," filed after they voluntarily dismissed the First Case. The graphic that follows depicts the procedural facts and timeline relevant to this appeal:

---

1. UPS filed a subrogation cross-claim against JJ to recover worker's compensation funds in the event he recovered damages in his suit. The trial court denied Bowen and Neyer Plumbing's motion for summary judgment against UPS. No party appealed this denial, so neither it, nor UPS, will be referenced further herein.



**{¶ 6}** Several facts depicted in this timeline and in the record are particularly important to this appeal. First, the Sapps properly demanded the clerk of courts issue a summons of service on Bowen, in Kentucky, and Neyer Plumbing, in Ohio, in the First Case. The clerk issued the summons, along with a copy of the Complaint to these defendants via certified mail through the United States Postal Service. On November 9, 2021, the clerk docketed the service as to Neyer Plumbing as a "SUCCESS." On that same date, the clerk received the certified mail delivery information for Timothy Bowen. Instead of including the signature of the recipient, the certified mail receipt contained the following information: "RAC USPS C2 C19 LEFT IN MAILBOX, 6904 BACKUS DR." The clerk noted the following as to Bowen's service on the docket: "COVID – USPS return for certified mail service (COVID-19) Service sent to Timothy Bowen left in mailbox." While the clerk did not docket Bowen's service as a "SUCCESS," neither did the clerk docket it as a failure.

**{¶ 7}** Second, Bowen's counsel filed a timely Answer to Sapp's Complaint in both the First and Second Cases. In both cases, Bowen's Answer asserted an affirmative defense of "insufficiency of service and/or insufficiency of service of process upon Defendants. If so, this Court lacks jurisdiction over Defendants." The record shows Bowen's counsel served a copy of this Answer to Sapp's counsel.

- 3 -

{¶ 8}   Third, the record shows the Sapps and Bowen continued litigating the First Case for nearly two years, including conducting discovery, obtaining expert witnesses, and engaging in settlement negotiations. At all times relevant here, Bowen's counsel represented him and actively participated in the litigation.

{¶ 9}   The record shows the Sapps did not demand the clerk of courts re-issue the service of summons on Bowen in the First Case after the clerk's initial issue of summons in November 2021, nor did the Sapps pursue a court order for personal service to Bowen, pursuant to Civ.R. 4.3(B)(2).

{¶ 10}  Finally, the Sapps voluntarily dismissed the First Case pursuant to Civ.R. 41(A)(1)(a) on October 5, 2023. This occurred after the statute of limitations had run for their claims. The Sapps filed the Second Case on February 7, 2024, based on the same facts and with the same claims as the First Case. The Sapps demanded the clerk of courts issue a service of summons in the Second Case to Bowen and Neyer Plumbing. The clerk did so, but the clerk docketed a failure of service on Bowen after receiving an unclaimed return to sender receipt from the USPS. The record shows no further attempt to perfect service as to Bowen in the Second Case.

{¶ 11}  The trial court granted Bowen and Neyer Plumbing's subsequent motion for summary judgment, dismissing all of the Sapps' claims with prejudice. The trial court found the Sapps failed to commence the First Case within one year after filing the complaint and also failed to dismiss the First Case within that one-year timeframe. Because of these failures, the trial court found Ohio's savings statute did not apply, and the Second Case was time barred by the statute of limitations.

{¶ 12}  The Sapps filed a timely appeal, urging this court to reverse the trial court's grant of summary judgment.

- 4 -

**Standard of Review**

{¶ 13} "An appellate court reviews a trial court's decision on a motion for summary judgment de novo, independently and without deference to the decision of the trial court." *Total Quality Logistics, L.L.C. v. JK & R Express, L.L.C.*, 2022-Ohio-3969, ¶ 17 (12th Dist.).

{¶ 14} A trial court may grant summary judgment when, "there is no genuine issue of material fact remaining for trial, the moving party is entitled to judgment as a matter of law, and reasonable minds can only come to a conclusion adverse to the nonmoving party, construing the evidence most strongly in that party's favor." *Id. See also* Civ.R. 56. Trial courts should "award summary judgment with caution," by resolving doubts and construing evidence in favor of the nonmoving party. *Welco Indus., Inc. v. Applied Cos.*, 67 Ohio St.3d 344, 346 (1993), citing *Murphy v. Reynoldsburg*, 65 Ohio St.3d 356 (1992).

{¶ 15} Likewise, questions related to statutory interpretation are subject to de novo review. *See Wayt v. DHSC, L.L.C.*, 2018-Ohio-4822, ¶ 15.

**Applicable Law**

{¶ 16} Ohio's statute of limitations for torts requires an action based on bodily injury to be brought within two years of when the injury occurs. R.C. 2305.10(A). "Statutes of limitations emphasize plaintiffs' duty to diligently prosecute known claims." *Wilson v. Durrani*, 2020-Ohio-6827, ¶ 10. However, Ohio law also contains a "Savings Statute," which provides, in relevant part,

> In any action that is commenced or attempted to be commenced, . . . if the plaintiff fails otherwise than upon the merits, the plaintiff . . . may commence a new action within one year after the date of . . . the plaintiff's failure otherwise than upon the merits or within the period of the original applicable statute of limitations, whichever occurs later.

R.C. 2305.19(A).

{¶ 17} This Savings Statute "acts as an exception to the general bar of the statute of limitations" and is "intended to provide a litigant an adjudication on the merits." *Wilson* at ¶ 11.

{¶ 18} In Ohio, a "civil action is commenced by filing a complaint with the court, if service is obtained [upon a named defendant] within one year from such filing." Civ.R. 3(A) ("Commencement Period"). When, as here, a clerk of court issues a summons for service upon a defendant, the clerk may do so by sending the summons and a copy of the complaint to the defendant via certified mail through the USPS. See Civ.R. 4(B), 4.1(A)(1)(a). Evidence of service of process sent via certified mail is "by return receipt signed by any person accepting delivery." Civ.R. 4.1(A)(1)(a). These same rules apply to service of Bowen, whose undisputed residence is in Kentucky. See Civ.R. 4.3(B)(1)(2).

{¶ 19} A plaintiff may voluntarily dismiss a claim, without prejudice, by "filing a notice of dismissal at any time before the commencement of trial unless a counterclaim which cannot remain pending for independent adjudication by the court has been served by that defendant[.]" Civ.R. 41(A)(1)(a). A voluntary dismissal under this Rule is a "failure otherwise than upon the merits" to which the Savings Statute could apply. *Frysinger v. Leech*, 32 Ohio St.3d 38, 42 (1987).

**Analysis**

{¶ 20} The Sapps raise two assignments of error: (1) the trial court erred in granting summary judgment to Bowen and Neyer Plumbing because service was perfected on Bowen; and (2) the trial court improperly construed and applied Ohio's Savings Statute. We find both arguments raised by the Sapps to be without merit.

**The Sapps Did Not Perfect Service on Timothy Bowen.**

{¶ 21} The Sapps assert that the complaint was delivered to Bowen's residence in Kentucky and to "say Bowen had no knowledge of the proceedings against him is

disingenuous at best based on this information alone." Further, the Sapps argue that counsel for Bowen entered an appearance, timely filed an answer on behalf of Bowen to their complaint, and engaged in the discovery process, including taking depositions and retaining expert witnesses to defend Bowen. All of that is true but none of it helps the Sapps to prove service was perfected on Bowen.

{¶ 22} The Ohio Rules of Civil Procedure are clear and apply equally to all parties involved in litigation. *Ackman v. Mercy Health W. Hosp., L.L.C.*, 2024-Ohio-3159, ¶ 19. As relevant here, the rules specify how service of process is to be completed and what provides evidence of perfected service. Civ.R. 4.1(A)(1)(a) ("Evidenced by return receipt signed by any person accepting delivery, service of any process shall be by United States certified or express mail unless otherwise permitted by these rules."). No one signed the return receipt associated with the requested service on Bowen in the First Case. Instead, someone (presumably the USPS mail carrier) marked it with "C19" and "LEFT IN MAILBOX."

{¶ 23} In their response to Bowen's motion for summary judgment, the Sapps argued that the USPS modified its procedures for mail delivery during the COVID pandemic, and these relaxed procedures should be allowed to substantiate proper service to Bowen in the First Case. The Sapps' argument fails for a few reasons. First, part of the modified USPS procedures during COVID the Sapps' referenced included knocking on the customer's door, asking for the customer's first initial and last name, then asking the customer to step back so that the carrier may leave the item in the mail receptacle.[2] Bowen's return receipt for the First Case offers no proof these procedures

---

2. *See* USPS, COVID-19 CONTINUITY OF OPERATIONS UPDATE, (Mar. 20, 2020), https://about.usps.com/newsroom/service-alerts/pdf/usps-continuity-of-operations-03-20-2020.pdf (Date accessed: July 9, 2026).

were followed. The receipt does not include the customer's first initial or last name, and no indication that the carrier had any contact with anyone at the address before leaving the item in the mailbox. Second, the Sapps argue that The Supreme Court of Ohio issued various Administrative Orders stating that a rule of the Court requiring "in-person service may be waived by the Court, local court, . . . as applicable." 3/27/2020 Administrative Actions, 2020-Ohio-1166, at (C). But the Sapps provided no evidence that the trial court waived any service requirement during the relevant time period.

{¶ 24} To be sure, one of the purposes of service is to provide notice of the complaint to the defendant. But perfection of service within one year of filing a complaint is required to "commence" an action under Civ.R. 3(A), and perfection of service also triggers other deadlines for filings from the parties. *See e.g.*, Civ.R. 12(A)(1). The Sapps assert that requiring strict compliance with the service of process rules during a global pandemic would be unjust, especially considering Bowen and his counsel fully participated in the litigation.

{¶ 25} The Sapps' assertions only look at one side of the fairness coin—their own. But they ignore Bowen's compliance with the same rules. To wit, Bowen properly asserted and preserved the insufficiency of process and insufficiency of service of process in his answer to the complaint. Civ.R. 12(B)(4),(5). Bowen served the answer on the Sapps' counsel, so the Sapps were placed on notice that Bowen asserted these affirmative defenses. At that point, the Sapps could have filed a motion for partial summary judgment on the issue of service, availed themselves of a court order for personal service, or asked the clerk to attempt service on Bowen again. *See* Civ.R. 4.1(A)(1); 4.3(B)(2). They did none of those things.

{¶ 26} We are sympathetic to the Sapps' frustration that one part of the government (via the USPS) enacted and followed COVID policies, while another part of

the government (via the courts) refused to recognize the adequacy of that compliance with those policies, as related to its rules of procedure. But "we cannot disregard [the] rules to assist a party who has failed to abide by them." (Citation omitted.) *Ackman*, 2024-Ohio-3159, at ¶ 19.

{¶ 27} We overrule the Sapps' first assignment of error.

**The Sapps Attempted to Commence the First Case.**

{¶ 28} Before we turn to the Sapps' second assignment of error, we must address whether they "attempted" to commence the First Case within the Commencement Period. They did.

{¶ 29} The Sapps assert they at least *attempted* to commence the First Case, and therefore the plain terms of the Savings Statute allowed them to refile the Second Case after the statute of limitations had run but within a year of their voluntary dismissal. The Sapps argue the Savings Statute contemplates a party "attempts to commence" an action when he "files a complaint with the clerk of the court within the applicable statute of limitations and demands service on that complaint." *Sorrell v. Estate of Datko*, 2001-Ohio-3460, ¶ 22 (7th Dist.); *see also Smith v. Wal-Mart Stores E., LP*, 2019-Ohio-5037, ¶ 16 (3rd Dist.).

{¶ 30} We agree with the analyses of our sister districts concerning what it means to "attempt to commence" an action, and the Sapps attempted to commence the First Case. But we disagree, as did the trial court, that this attempted commencement leads to the application of the Savings Statute in this instance.

**The Savings Statute Does Not Apply.**

{¶ 31} The Sapps' second assignment of error asserts that the trial court improperly construed and misapplied the Savings Statute. The trial court found the Sapps failed to commence the First Case within the Commencement Period and also failed to

dismiss the First Case within that same timeframe. Because of these failures, the trial court found the Savings Statute did not apply and the Second Case was time barred by the statute of limitations, even if the Sapps "attempted to commence" the First Case.

{¶ 32} The trial court rested its reasoning largely on *Moore v. Mt. Carmel Health Sys.*, 2020-Ohio-4113. The Court held that when "(1) a plaintiff attempts to commence an action but fails to obtain service within Civ.R. 3(A)'s one-year commencement period and (2) the action has neither failed other than on the merits during that one-year period (i.e., been dismissed without prejudice) nor been refiled, (3) the plaintiff cannot use the savings statute to revive the action outside the limitations period." *Id*. at ¶ 36.

{¶ 33} The Court compared *Moore*'s procedural posture to a case in which after "the limitations period had run, but within Civ.R. 3(A)'s commencement period, the action was dismissed without prejudice without the plaintiff having obtained service." *Id*. at ¶ 28, citing *Thomas v. Freeman*, 79 Ohio St.3d 221, 227 (1997) (holding Savings Statute applied). The Sapps argue the trial court should have applied *McCullough v. Bennett*, 2024-Ohio-2783 (applying Savings Statute when case was dismissed twice, without prejudice, before the Commencement Period expired, then refiled after statute of limitations ran but within one year of last dismissal).

{¶ 34} In order to compare the various procedural postures relevant to *Thomas*, *Moore*, and *McCullough* to that of the Sapps' posture here, those postures are depicted in the graphics on the next page, starting with the case before this court, followed by the other cases referenced, in chronological order.

- 10 -

1. *Sapp v. Bowen* Timeline: Dismissal *after* Commencement Period expired



2. *Thomas v. Freeman*, 79 Ohio St.3d 221 (1997) Timeline: Both dismissals by court *before* applicable Commencement Period expired; Savings Statute *did* apply



3. *Moore v. Mt. Carmel Health Sys.*, 2020-Ohio-4113 Timeline: *No dismissal*, second instruction to serve *after* Commencement Period expired; Savings Statute did *not* apply



4. *McCullough v. Bennett*, 2024-Ohio-2783 Timeline: Two dismissals *before* Commencement Period expired; Savings statute *did* apply



{¶ 35} As relevant to this appeal, and with the understanding that a voluntary dismissal is a "failure otherwise than on the merits," the Savings Statute provides,

> In any action that is commenced or . . . attempted to be commenced, . . . if the plaintiff [voluntarily dismisses the action], the plaintiff . . . may commence a new action within one year after the date of [the voluntary dismissal] or within the period of the original applicable statute of limitations, whichever occurs later.

R.C. 2305.19(A).

{¶ 36} The Sapps attempted to commence the First Case, voluntarily dismissed it, and refiled the Second Case within a year of the dismissal. So how could the Sapps' Second Case not be saved by the Savings Statute? Because they failed to consider the interplay between the Commencement Period, Ohio's Civil Rules surrounding voluntary dismissal, and the Savings Statute.

{¶ 37} When a conflict exists between Ohio's Civil Rules and "inconsistent statutes purporting to govern procedural matters," the Civil Rule controls. *Rockey v. 84 Lumber Co.*, 66 Ohio St.3d 221 (1993). "Generally, when a statutory provision conflicts with the Civil Rules, the rule controls procedural issues and the statute controls matters of substantive law." *Ohio Patrolmen's Benevolent Assn. v. Cleveland*, 2024-Ohio-2651, ¶ 15 citing *Ferguson v. State*, 2017-Ohio-7844 ¶ 20, citing *Boyer v. Boyer*, 46 Ohio St.2d 83, 86 (1976) and Ohio Const., art. IV, § 5(B).

{¶ 38} While the Savings Statute concerns when a statute of limitations will foreclose a refiled action and Civ.R. 3(A) concerns when an action must be commenced, reading them in harmony prevents a conflict. The Court's analyses in *Thomas*, *Moore*,

- 12 -

and *McCullough* make it clear: in order to use the Savings Statute, a plaintiff who does not perfect service (i.e., only "attempts" to commence), must dismiss the case prior to the expiration of the Commencement Period. Otherwise, the requirement to commence an action within a year would be meaningless because a voluntary dismissal after both the Commencement Period and the statute of limitations expired would "save" it.

{¶ 39} To put the Savings Statute and its relevant meaning here another way, if a plaintiff voluntarily dismisses a complaint in the Commencement Period, after having attempted to commence the action, then the plaintiff may commence a new action within one year of the voluntary dismissal.

{¶ 40} Looking back at the graphical depictions of the caselaw above, this reading of the Savings Statute becomes evident. In *Thomas* and *McCullough*, the cases were dismissed without prejudice before the applicable Commencement Period expired and refiled within a year, so the Savings Statute applied. In *Moore*, the case was never dismissed at all (so the time relevant to Moore's Savings Statute argument necessarily fell outside the Commencement Period and the statute of limitations), and the Savings Statute did not apply.

{¶ 41} The problem is not that the Sapps failed to "attempt to commence" the First Case within the Commencement Period—they did. The problem is that the Sapps did not voluntarily dismiss the First Case within the Commencement Period. Allowing the Savings Statute to apply with the Sapps' procedural posture would unfairly breathe life into a dead cause of action.

{¶ 42} We overrule the Sapps' second assignment of error.

### Conclusion

{¶ 43} We acknowledge this decision is "harsh medicine" with very real consequences to the Sapps. But the statute of limitations prioritizes plaintiffs diligently

litigating their known claims in a timely manner. While the General Assembly extended some leeway to the statute of limitations via the Savings Statute, that leeway is not limitless. And the limits must take into account the relevant procedural rules.

{¶ 44} We found the Sapps did not commence the First Case and therefore overruled their first assignment of error. We also overruled the Sapps' second assignment of error, finding they failed to voluntarily dismiss the First Case within the Commencement Period. This failure means that the Sapps' Second Case is not "saved" from the consequences of being filed after the statute of limitations had run. The trial court did not err when it granted summary judgment in favor of Bowen and Neyer Plumbing.

{¶ 45} Judgment affirmed.

PIPER, P.J., and M. POWELL, J., concur.

# **J U D G M E N T   E N T R Y**

The assignments of error properly before this court having been ruled upon, it is the order of this court that the judgment or final order appealed from be, and the same hereby is, affirmed.

It is further ordered that a mandate be sent to the Clermont County Court of Common Pleas for execution upon this judgment and that a certified copy of this Opinion and Judgment Entry shall constitute the mandate pursuant to App.R. 27.

Costs to be taxed in compliance with App.R. 24.

*/s/ Robin N. Piper, Presiding Judge*

*/s/ Mike Powell, Judge*

*/s/ Melena S. Siebert, Judge*